UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMED S. ADAN, an individual,<br><br>                     Plaintiff,<br><br>v.<br><br>INSIGHT INVESTIGATION, INC. a California corporation; and DOES 1-10, inclusive,<br><br>                    Defendant. | Case No.: 16cv2807-GPC(WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Dkt. Nos. 43, 44.] |

Before the Court is Defendant's motion for partial summary judgment and Plaintiff's motion for partial summary judgment. (Dkt. Nos. 43, 44.) Oppositions and reply briefs were filed. (Dkt. Nos. 46, 47, 48, 49.) After a review of the briefs, the supporting documentation, and the applicable law, the Court GRANTS in part and DENIES in part Defendant's motion for partial summary judgment and DENIES Plaintiff's motion for partial summary judgment.

/ / / /

/ / / /

## Procedural Background

On November 15, 2016, the case was removed from state court. (Dkt. No. 1.) After the Court granted Plaintiff's motion for leave to file an amended complaint, (Dkt. No. 20), on April 18, 2017, Plaintiff Ahmed S. Adan ("Plaintiff" or "Adan") filed a first amended complaint ("FAC") against Defendant Insight Investigations, Inc. ("Defendant" or "Insight"). (Dkt. No. 21.) Plaintiff claims that he was the victim of an erroneous employment background check report which included a criminal history that was not his but another person's with the same name, and as a result, was never hired for the job he was offered. (Id.)

## Factual Background

On February 20, 2015, Road Runner Sports ("RRS") placed a request with Insight for a background check report on Plaintiff in connection with an offer of employment. (Dkt. No. 47-21, P's Response to D's SSUF, No. 1.) On February 20, 2015, Plaintiff signed a document titled "Consent to Obtain Consumer Reports For Employment Purposes," authorizing Insight to conduct a background check on him in connection with an offer of employment from RRS. (Id., No. 2.) After receiving the request from RRS, Insight emailed a link to its online portal to Plaintiff via email, where Plaintiff had the opportunity to review the information already inserted by RRS and make changes or comments, where necessary. (Id., No. 3.) At the time, Plaintiff did not disclose a middle name as it was not a requirement on the online request. (Id., No. 4.)

On March 2, 2015, Insight completed the report on Plaintiff. (Id., No. 5.) In March 2015, RRS informed him that his offer of employment had been rescinded. (Id., No. 6; Dkt. No. 43-7, Stepanyan Decl., Ex. 3, Adan Depo. at 76:7-24 (Adan testified concerning when he was informed of RRS' decision to rescind his offer as follows: "I'm not sure a hundred percent, but it was -- I don't know if it was April or March.") The background report disclosed a criminal history belonging to another individual. (Dkt. No. 46-11, D's Response to P's SSUF, No. 1.) On March 23, 2015, Plaintiff contacted Insight by telephone, for the first time, disputing the information on his background

2

check report. (Dkt. No. 47-21, P's Response to D's SSUF, No. 7.) At the time, Plaintiff did not disclose his middle name and Defendant never asked for his middle name. (Id., No. 8.) During the call, Plaintiff was told to obtain a Case of Mistaken Identity from San Diego Superior Court. (Dkt. No. 46-11, D's Response to P's SSUF, No. 5.) After this phone call disputing the information on his consumer report, Defendant did not provide any written notice to Plaintiff about the results of any reinvestigation. (Id., No. 6.)

On April 8, 2015, Plaintiff called Insight again disclosing his middle name. (Dkt. No. 47-21, P's Response to D's SSUF, No. 9.) Subsequent to the call, it was discovered that the criminal history belonged to an Ahmed N. Adan, not Plaintiff Ahmed S. Adan. (Dkt. No. 47-2, Fok Decl., Ex. 1 at 5.) On April 9, 2015, Insight updated Plaintiff's report. (Dkt. No. 46-11, D's Response to P's SSUF, No. 10.) Insight subsequently called RRS to inform it of the update on the report.[1] (Id., No. 11.)

On April 14, 2015, Plaintiff obtained a "Certificate of Identity Theft: Judicial Finding of Factual Innocence" from San Diego Superior Court. (Dkt. No. 47-21, P's Response to D's SSUF, No. 12.) On the same day, after the state court proceeding, Plaintiff was informed by April Harvey, the Human Resources coordinator at RRS, that Insight had updated his report. (Id., No. 13.)

The FAC alleges four causes of actions for violations of certain provisions under the Fair Credit Reporting Act ("FCRA"). The first cause of action alleges a violation of 15 U.S.C. § 1681e(b) for willfully/recklessly, or in the alternative, negligently failing to utilize reasonable procedures to ensure the maximum possibly accuracy of the information. (Dkt. No. 21, FAC ¶¶ 39, 46.) The second cause of action claims a violation of 15 U.S.C. § 1681k(a)(2) for willfully/recklessly, or in the alternative, negligently failing to utilize strict procedures to ensure that the reported public records

---

[1] The fact is disputed as to when Insight informed RRS about the updated report. Defendant claims it notified RRS on April 9, 2015, (Dkt. No. 43-6, Stepanyan Decl., Ex. 2, Bovy Depo. at 13:24-14:17), while Plaintiff asserts RRS was notified on April 14, 2015, (Dkt. No. 47-19, Fok Decl., Ex. 18 at 6).

information for employment purposes was complete and up to date.  (Id. ¶¶ 48, 52.)  The third cause of actions asserts a violation of 15 U.S.C. § 1681g(a) for willfully/recklessly, or in the alternative, negligently failing to disclose to Plaintiff his full file despite multiple requests.  (Id. ¶¶ 54, 57.)  The fourth cause of action claims a violation of 15 U.S.C. § 1681i(a)(6) for willfully/recklessly, or in the alternative, negligently failing to provide Plaintiff with written notice of the results of the reinvestigation within five business days after the completion of the reinvestigation.  (Id. ¶¶ 59, 63.)

In his opposition to Defendant's motion for partial summary judgment, Plaintiff does not oppose Defendant's motion for partial summary judgment on the third cause of action for willful and negligent violation of 15 U.S.C. § 1681g(a), and in fact concedes that there are no material issues of fact on the third cause of action.  (Dkt. No. 47 at 20 ("Plaintiff intends to file a non-opposition to Defendant's motion on Plaintiff's Third cause of action.").)  Therefore, the Court GRANTS as unopposed Defendant's motion for partial summary judgment on the third cause of action for willful and negligent violations of 15 U.S.C. § 1681g(a).

## A.  Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing

sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

In its motion for partial summary judgment, Defendant first claims that Plaintiff lacks Article III standing to bring his third cause of action for a violation of 15 U.S.C. § 1681i(a)(6) as there has been no showing of any concrete harm to Plaintiff. Moreover, even if he had standing, Plaintiff cannot establish a negligent violation because he cannot establish actual damages which is required under 15 U.S.C. § 1681o. Next, as to the remaining three causes of action, Defendant argues Plaintiff lacks evidence to support statutory and punitive damages as there is no evidence of any willfulness and/or recklessness on the part of Insight.

**B.    Article III Standing**

Defendant argues that Plaintiff does not have Article III standing to bring his fourth cause of action under 15 U.S.C. § 1681i(a)(6)(A). Plaintiff disagrees.

"[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of demonstrating these elements. Id.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. Id. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." Id. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." Id. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. Id. at 1549.

In order to determine whether an intangible harm constitute injury in fact, the Court in Spokeo provided two factors to be considered: "history and the judgment of Congress." Id. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." Matera v. Google, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016).

Spokeo also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." Spokeo, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." Id. But, a plaintiff does not automatically satisfy the injury requirement whenever a statute grants a right and purports to authorize a suit to vindicate

16cv2807-GPC(WVG)

it.  Id.  "Article III standing requires a concrete injury even in the context of a statutory violation."  Id.

In Spokeo, the defendant allegedly violated the Fair Credit Reporting Act ("FCRA"), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports.  Id. at 1545 (quoting 15 U.S.C. § 1681e(b)).  The U.S. Supreme Court noted that the Ninth Circuit's analysis addressed whether the injury was particularized but did not address whether the alleged procedural FCRA violation constituted a "concrete injury" and remanded the issue to the Ninth Circuit.  Id. at 1550.  The Court, as an example, noted that "[i]t is difficult to imagine how the dissemination of an incorrect zip code [in violation of the FCRA], without more, could work any concrete harm."  Id.  Thus, while "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," a "bare procedural violation, divorced from any concrete harm" is not.  Id. at 1549 (citing Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009)).

On remand, the Ninth Circuit addressed whether the plaintiff sufficiently plead a concrete injury.  Robins v. Spokeo, Inc., 867 F.3d 1108, 1111-12 (9th Cir. 2017).  The Ninth Circuit asked "(1) whether the statutory provisions at issue were established to protect his concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests."  Id. at 1113.

The Ninth Circuit held that Robins alleged injuries that were concrete sufficient to establish Article III standing as the statutory provision at issue, 15 U.S.C. § 1681e(b) requiring reporting agencies to "follow reasonable procedures to assure maximum possible accuracy", protects Robin's concrete interest in accurate credit reporting.  Id. at 1115.  Second, it held that Robins also alleged actual harm because Spokeo had prepared a report that contained inaccurate information about him and published it on the Internet.  Id. at 1116.  The Ninth Circuit concluded that Robins's claim implicates his "concrete interests in truthful credit reporting."  Id.

7

Here, the fourth cause of action alleges a failure to receive written notice of the results of the reinvestigation within five business days of its completion in violation of 15 U.S.C. § 1681i(a)(6)(A).[2]  Defendant argues that Plaintiff lacks Article III standing to bring his fourth cause of action for violation of 15 U.S.C. § 1681i(a)(6) as he is alleging a mere procedural violation that he did not receive the results of reinvestigation within five business of its completion without a showing of any concrete harm to him.  According to Defendant, the legislative intent of the FCRA, to prevent the inaccuracy in credit reports, is not implicated with the notice of reinvestigation after an error has potentially been made.  In response, Plaintiff argues that the provision is a tool designed to protect against inaccuracies.[3]  As to actual harm, he maintains that because Defendant failed to provide written notice of the results of a reinvestigation within 5 business days after completion of the reinvestigation, he continued to prosecute his "mistaken identity" petition and spent time and money to attend the Certificate of Factual Innocence hearing which did not even address the inaccuracy in his report.  If he had been informed of the results of the reinvestigation, Adan would have ceased prosecuting his petition of mistaken identity.  Moreover, by not informing him, he continued to worry about his job prospect and suffered emotional distress.

Under <u>Robins</u>, the Court first asks whether 15 U.S.C. § 1681i(a)(6)(A) was enacted to protect Adan's concrete interests.  <u>Robins</u>, 867 F.3d at 1113.  Congress' purpose in enacting the FCRA was to ensure 'fair and accurate credit reporting'" and provides procedures to "curb the dissemination of false information."  <u>Spokeo</u>, 136 S. Ct.

---

[2](A) In general.--A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

15 U.S.C. § 1681i(a)(6)(A).

[3] Confusingly, the Court notes that Plaintiff's full argument on Article III standing is partly contained in his opposition to Defendant's motion for partial summary judgment and partly contained in his reply to his motion for partial summary judgment.  (Dkt. Nos. 47, 49.)

at 1545, 1550.  Congress also "emphasized that 'the consumer has a <u>right</u> . . . to correct any erroneous information in his credit file." <u>Thomas v. FTS USA, LLC</u>, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016) (citation omitted) (emphasis in original).  Congress also sought "'to establish [ ] the <u>right of a consumer to be informed</u> of investigations into his personal life.'" <u>Id.</u> (emphasis in original).

    The reinvestigation procedure that requires a credit reporting agency[4] ("CRA") to conduct a free reinvestigation of any dispute raised by a consumer under § 1681i supports Congress' purpose in curbing or decreasing the risk of the dissemination of false information by requiring CRA's to conduct a prompt investigation of any inaccurate or incomplete information in a consumer's report.  The provision requires that once a reinvestigation is completed, the CRA must provide written notice to the consumer by mail or "if authorized by the consumer for that purpose, by other means available." <u>See</u> U.S.C. § 1681i(a)(6)(A).  The prompt notice requirement concerning the results of a reinvestigation promotes Congress' purpose in enacting the FCRA to ensure "fair and accurate reporting" and ensure the "integrity of information in the consumer's file and on the consumer's piece of mind in knowing about the CRA's conclusion after reinvestigation." <u>Ricketson v. Experian Info. Solutions, Inc.</u>, -- F. Supp. 3d --, 2017 WL 3142750, at *4 n.3 (W.D. Mich. July 18, 2017).  Therefore, the Court concludes that the first factor of <u>Robins</u> has been met that 15 U.S.C. § 1681i(a)(6) was enacted to protect Adan's concrete interests in "fair and accurate" reporting.

---

[4] (f) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  The parties do not dispute that Insight is a CRA subject to the FCRA.

Next, the Court must address whether Defendant's failure to provide written notice to Plaintiff about the results of the reinvestigation within 5 business days, caused actual harm or presented a material risk of harm to his interest in fair and accurate reporting. See <u>Robins,</u> 867 F.3d at 1113.

Defendant contends that no actual harm has been demonstrated from its alleged failure to provide Plaintiff with written notice of the results of the reinvestigation. Plaintiff claims he unnecessarily spent time and money prosecuting and attending a hearing for his petition of "mistaken identity" and subsequently obtained a certification of identity theft concerning a judicial finding of factual innocence on April 14, 2015. (Dkt. No. 47-17, Fok Decl., Ex. 16 at 2.) He also suffered emotional distress concerning his job prospect with RRS.

On April 8, 2015, Plaintiff contacted Insight and talked with Donna Cotter, an Insight representative. In this telephone conversation, he provided his middle name. In that phone call, Adan expressed his concern that his job will not be there by the time he gets his name cleared at a court hearing on April 13, 2015. (Dkt. No. 47-2, Fok Decl., Ex. 1 at 4.) This concern is memorialized in an email from Donna Cotter to Joshua Haydon, the CEO of Insight. (<u>Id.</u>) It appears that after the phone call, Cotter conducted a social security trace and instantly learned that the criminal history of Ahmed Adan, with the middle initial of N., had been reported on Plaintiff's background check report. (<u>Id.</u>)

It is undisputed that Defendant updated Plaintiff's report on April 9, 2015. Defendant had until April 16, 2017[5] to submit a written report to Plaintiff but no written report was ever provided to him.[6] As a result, Plaintiff unnecessarily attended his "mistaken identity hearing" in state court and continued to worry about his job prospect.

---

[5] While Defendant states it had until April 17, 2015 to provide notice, the Court's calculation that Defendant until April 16, 2015 is based on computing the five business days under Federal Rule of Civil Procedure 6.

[6] As discussed below, there is a genuine issue of material fact as to whether Defendant complied with the statute by providing oral notice.

Emotional distress regarding the uncertainty of his job prospects constitute concrete harm resulting from informational injury.  <u>Ricketson</u>, 2017 WL 3142750, at *5 (citing <u>Guimond</u>, 45 F.3d at 1332-33 (holding that "actual damages" under the FCRA "include[s] recovery for emotional distress and humiliation"); <u>see also</u> <u>Davis v. Astrue</u>, 874 F. Supp. 2d 856, 863 (N.D. Cal. 2012) ("[M]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing").

Plaintiff has demonstrated actual harm by the cost, time and emotional distress from Defendant's failure to comply with the notice provision.  Even though Defendant argues Plaintiff knew on April 14, 2015 that his report was updated when he was informed by April Harvey, RRS's HR coordinator, the question is not when he learned of the updated report but whether Defendant complied with the statute and provided written notice to Adan and the resulting harm from Defendant's failure to act.  Accordingly, the Court concludes Plaintiff has established concrete injuries to satisfy Article III standing.

Furthermore, the alleged failure to provide Plaintiff with written notice of the results of the reinvestigation constitutes a right to information or informational injury.  <u>Ricketson</u>, 2017 WL 3142750, at *4 (violation of § 1681i constitutes informational injury); <u>see also</u> <u>Syed v. M-I, LLC,</u> 853 F.3d 492, 499 (9th Cir. 2017) (disclosure requirement creates a right to information).  Courts have held that "'informational injury' is a type of intangible injury that can constitute an Article III injury in fact."  <u>Stacy v. Dollar Tree Stores, Inc.,</u> -- F. Supp. 3d --, 2017 WL 3531513, at *6 (S.D. Fla. Aug. 14, 2017) (quoting <u>Dreher v. Experian Info. Solutions, Inc.,</u> 856 F.3d 337, 345 (4th Cir. 2017)).  "[A] constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect."  <u>Dreher</u>, 856 F.3d at 345 (emphasis in original).  A plaintiff who alleges a "violation of a statutory right to receive information alleges a concrete injury."  <u>Church v. Accretive Health, Inc.,</u> 654 Fed. App'x 990, 994-95 (11th Cir. 2016).

Accordingly, the Court concludes that Plaintiff has sufficiently demonstrated concrete harm to satisfy Article III standing to assert a cause of action for a violation of 15 U.S.C. § 1681i(a)(6). The Court DENIES Defendant's motion for partial summary judgment on the fourth cause of action for lack of Article III standing.

**C.     Actual Damages for Negligent Violations under 15 U.S.C. § 1681o**

Next, Defendant argues that even if Plaintiff has standing, he cannot establish a negligent violation of 15 U.S.C. § 1681i(a)(6) since he cannot prove actual damages as required by 15 U.S.C. § 1681o as to the fourth cause of action. Plaintiff opposes.

15 U.S.C. § 1681o provides,

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of – (1) any actual damages sustained by the consumer as a result of the failure . . . .

15 U.S.C. § 1681o.

Defendant raises the same facts and arguments about actual harm it raised concerning the Article III standing issue but does not provide any legal authority that the requirement of actual damages under § 1681o is distinct from actual harm under Article III standing. Because the Court concluded that Plaintiff presented sufficient facts to assert actual harm under Article III standing, the Court concludes Plaintiff has provided sufficient facts to support actual damages for his allegation of a negligent violation of 15 U.S.C. § 1681i(a)(6).

**D.     Willful Violations under the FCRA[7]**

Defendant moves for summary judgment arguing there is no evidence of any willful and/or reckless violation of the first and second causes of action under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k(a)(2). It argues that under the United States Supreme Court case of <u>Safeco, Ins. Co. of America v. Burr</u>, 551 U.S. 47 (2007), there is no

---

[7] Defendant does not move for summary judgment on the first two causes of action for negligent violations of 15 U.S.C. § 1681e(b) and § 1681k(a)(2).

"clearly established" authority mandating Insight to verify Adan's middle name with RRS and to make the "middle name" a required field for its clients or consumers. Plaintiff asserts that Defendant failed to require a middle name from employers or consumers, failed to inquire further when no middle name was provided, failed to take into account the name variations including middle name initials revealed in its social security trace product, failed to provide the court researcher all name variations known to Defendant, which is in violation of its own agreement, failed to ensure its court researchers return the exact full name of the criminal defendant, failed to consult court records when there is a criminal "hit" and failed to conduct a root-cause analysis of consumer complaints despite multiple prior disputes. (Dkt. No. 47 at 18.) He claims Insight should have known that its procedure involved a high risk of harm.

Statutory and punitive damages are available under the FCRA only where a defendant "willfully fails to comply" with the statute. 15 U.S.C. § 1681n(a). Willfulness under § 1681n reaches actions taken in "reckless disregard of statutory duty," in addition to actions "known to violate the Act." Safeco, 551 U.S. at 56-57. "[W]illfulness or recklessness is a higher standard" than negligence. Collins v. Experian Info. Solutions, Inc., 775 F.3d 1330, 1336 (11th Cir. 2015).

A party does not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. A defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that is should be known." Id. at 68.

Generally, courts have held that willfulness under the FCRA is a fact issue for the jury.[8] Taylor v. First Advantage Background Servs. Corp., 207 F. Supp. 3d 1095, 1112

---

[8] Defendant argues that willfulness is a question of law for the Court and cites to Syed where the Ninth Circuit stated that a "court may resolve a question of willfulness as a matter of law." Syed v. M-I, LLC,

(N.D. Cal. 2016) (citing cases); Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (willfulness under FCRA is a fact question for the jury) (citing Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) ("The reasonableness of the procedures and whether the [insurance] agency followed them will be jury questions in the overwhelming majority of cases.")); Lenox v. Equifax Info. Servs. LLC, No. 05–01501–AA, 2007 WL 1406914, at *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); Cairns v. GMAC Mortgage Corp., No. CV 04–01840 PHX(SMM), 2007 WL 735564, at *8 (D. Ariz. Mar. 5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine").

The first cause of action alleges that Defendant willfully and/or recklessly violated 15 U.S.C. § 1681e(b)[9] by failing to use reasonable procedures to ensure the maximum possible accuracy of the information. (Dkt. No. 21, FAC ¶ 39.) "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." Guimond, 45 F.3d at 1333 (citations omitted). Therefore, a reasonableness determination of Insight's procedures and whether it was

---

853 F.3d 492, 503 (9th Cir. 2017). However, Syed involved FCRA's stand-alone disclosure requirement which was held to be not ambiguous and where the parties acknowledged that the court may resolve the question as a matter of law. Id. Syed did not involve the reasonableness of the procedures used by a credit reporting agency and is not applicable to this case.

[9] 15 U.S.C. § 1681e(b) provides:

(b) Accuracy of report
Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

followed are typically jury question.[10]  Id.; Neill v. Experian Info. Solutions, Inc., No. CV 16-4326-PHX-JJT, 2017 WL 3838671, at *2 (D. Az. Sept. 1, 2017) (jury questions as to reasonableness of procedures and whether agency followed them).  Determining whether there has been a willful violation of § 1681e(b) is typically a question of fact for the jury.  Taylor v. First Advantage Background Servs. Corp., 207 F. Supp. 3d 1095, 1112 (N.D. Cal. 2016); Starkey v. Experian Info. Solutions, Inc., 32 F. Supp. 3d 1105, 1111 (C.D. Cal. 2014) (denying summary judgment on willful violation under § 1681e(b).)

The second cause of action raises a claim under 15 U.S.C. § 1681k(a)(2) for willfully/recklessly failing to use strict procedures to ensure that the reported public records information for employment purposes was complete and up to date.  (Dkt. No. 21, FAC ¶ 48.)  15 U.S.C. § 1681k(a)(2) provides,

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall-- . . . (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

15 U.S.C. § 1681k(a)(2).

To show a violation under this section, a plaintiff must show that: "(1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to maintain strict procedures designed to insure that the information in that report was complete and up to date; and (3) the consumer report was either incomplete or not up to date."  Henderson v. Corelogic Nat'l

---

[10] Defendant objects to the evidence and arguments presented by Plaintiff that addresses the "reasonableness" of its procedures as applicable to a negligent violation and not applicable to a willful violation.  However, the statute requires that the Court consider whether Insight followed "reasonable procedures to assure maximum possibility accuracy of the information", 15 U.S.C. § 1681e(b).  Because a determination of a willful violation of § 1681e(b) requires an inquiry into whether reasonable procedures were followed, such a violation is a question for the jury.

Background Data, LLC, 178 F. Supp. 3d 320, 333 (E.D. Va. 2016) (citing Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 700 (N.D. Ga. 2012)).  A record is "complete" if it allows a "user to either link the record to the consumer who was the subject of the search query or exclude that consumer as the source of the record. Conversely, then, any record that does not contain sufficient identifying information to verify the identity of the originating consumer is incomplete." Id. at 334.  The term "strict procedures" have not been defined by the FCRA but requires more than "reasonable procedures. Id. at 336.

Here, since the issue of reasonableness is a question for the jury, then the issue of whether Defendant maintained strict procedures is also a question for the jury. Id. at 336. (citing Dalton v. Capital Ass. Indus., Inc., 257 F.3d 409, 417 (4th Cir. 2001) ("because . . . there is a factual dispute over whether [the defendant] followed reasonable procedures, we necessarily hold that there is a factual dispute over whether it followed strict procedures."); Adams v. Nat'l Eng'g Serv. Corp., 620 F. Supp. 2d 319, 332 (D. Conn. 2009) ("because the court has already found that there exists a factual dispute over whether [defendant] followed reasonable procedures, the court necessarily holds that there exists a genuine issue of material fact as to whether it followed strict procedures.").

In its motion, Defendant relies on the analysis in Safeco to demonstrate its actions were not willful by arguing that since there is no "clearly established" authority that required Insight to verify Plaintiff's middle name with RRS and make the "middle name" a required field for its clients or consumers, its procedures were not a violation under a reasonable reading of the statutes.  Defendant argues that the texts of both statutes are less than "pellucid" as to the steps Plaintiff claims it should have taken in procuring Plaintiff's report. Plaintiff opposes contending that there was ample authority to put Insight on notice that its procedures involved a high risk of harm.

As an initial matter, Defendant's argument that it did not willfully violate the FCRA because there was no "clearly established" law requiring it to verify Plaintiff's middle name or make the middle name a required field is an incorrect interpretation of Safeco. Ramirez v. Trans Union, LLC, Case No. 12cv632-JSC, 2017 WL 113161, at *2

(N.D. Cal. Mar. 27, 2017) (Safeco did not hold that a defendant's conduct willfully violates the FCRA only when its conduct violated clearly established law). Instead, the Court in Safeco utilized the "clearly established" language in the case of Saucier v. Katz, 533 S. Ct. 2151 (2001) addressing qualified immunity, to support its holding that reckless disregard requires an objectively unreasonable reading of the statute. Safeco, 551 U.S. at 70. It did not hold that the law must be "clearly established" in order to demonstrate reckless conduct. Therefore, Defendant's "clearly established" argument on a willful/reckless violation is not well-taken.

On the issue of reckless disregard, the United States Supreme Court held that a plaintiff must show that the defendant's reading of the statute's terms was objectively unreasonable and the defendant ran the risk of "violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69.

First, to determine whether the reading of the statute was objectively unreasonable, the Court in Safeco noted that the statute was silent on what the word "increase" meant and because the Court had no guidance from courts of appeal or the Federal Trade Commission, it held that due to the dearth of guidance and the "less-than-pellucid statutory text", Safeco's reading was not objectively unreasonable. Id. at 69-70. Recently in Syed, the Ninth Circuit rejected the defendant's argument that since there was minimal guidance from federal appeals courts and administrative agencies on the interpretation of the statute at issue, it rendered the defendant's interpretation of the statute objectively reasonable. Syed, 853 F.3d at 503. The Ninth Circuit held that the lack of guidance on a statute's interpretation does not render defendant's interpretation reasonable. Id. at 504. "[L]ack of definitive authority does not, as a matter of law, immunize [a party] from potential liability." Id. (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 721 (3d Cir. 2010)). In Syed, the court held that although there was a dearth of guidance on the issue it concluded that the defendant's interpretation was "objectively unreasonable." Id.

17

In this case, Defendant argues there was no guidance from the court of appeals or the Federal Trade Commission on whether it should have required a middle name as an identifier from its customer or from Plaintiff. Plaintiff responds that there was ample authority to put Defendant on notice that its procedure involved a high risk of harm. Plaintiff cites to a consent order entered into with the Federal Trade Commission. FTC v. TRW Inc., 784 F. Supp. 361 (N.D. Tex. 1991). TRW addressed mixed file cases, in general, where some or all information in a consumer report pertains to persons other that the person who is subject to that report. Id. at 362. In order to reduce the incidence of mixed files, TRW was required to improve "information gathering, storing and generating systems to reduce occurrences of Mixed Files" to allow its software system to use a consumer's full identifying information, defined as full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number, for matching and identification purposes. Id. at 362.

Plaintiff also cites to the following cases. In Adams, the plaintiff applied for a contract position, and was hired contingent on a background check. Adams, 620 F. Supp. 2d at 323-24. The background check revealed several possible criminal records when her first name, last name and date of birth was entered but the criminal records were not hers. Id. She subsequently was not hired for the position. Id. at 326. The Court held that there were genuine issues of material fact as to her claim under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k(a)(2). Id. at 330, 332. In another case, Smith v. LexisNexis Screening Solutions, Inc., 76 F. Supp. 3d 651, 664 (E.D. Mich. 2014), aff'd in part and rev'd in part by 837 F.3d 604 (6th Cir. 2016), the court denied the defendant's motion for summary judgment on whether Defendant's practice of not requiring employers to provide consumers' middle names could pose an unjustifiably high risk of harm. Id.

These authorities provided Defendant with notice that mixed file cases are not uncommon and that other persons' criminal records have appeared for persons with the same name, last name and birthdate. While there is no specific guidance from any caselaw or the FTC concerning the requirement of a middle name when conducting a

background check, the Court cannot conclude that Insight's interpretation of the two provision was objectively reasonable.

After a jury trial in <u>Smith</u>, the Sixth Circuit reversed the jury verdict's finding of willful violation of the FCRA on whether the defendant took reasonable steps under § 1681e(b). <u>Smith v. LexisNexis Screening Solutions, Inc.</u>, 837 F.3d 604, 610 (6th Cir. 2016). The court explained the defendant's efforts to combat inaccuracies such as requiring a first name, last name, and birthdate, and also when provided a middle name and social security number kept the agency's dispute rate at a low 0.2% and precluded a finding of willful violation of § 1681e(b). <u>Id.</u> at 610-11. The Sixth Circuit also noted that a single inaccuracy does not rise to the level of willful violation of the FCRA. <u>Id.</u> at 611.

Defendant asserts the facts of this case is akin to <u>Smith</u>. Defendant claims it vetted and audited its vendors it used to obtain consumer information to ensure they were providing accurate information, and because of this practice and procedure, Insight's dispute rate has been significantly less than 1% in the years before Plaintiff's report.

In response, Plaintiff has raised evidence to create a genuine issue of material fact whether its procedures when vetting its venders were reasonable in order to assure maximum possible accuracy on consumer reports and whether its dispute rate is accurate. According to Insight's vetting requirements on its researcher or vendors, it "requires due diligence and vetting to be performed on every public record researcher prior to the use of their services . . . . Prior to use, Insight Investigations, Inc. verified . . . confirmation of certification under the 'NAPBS PROVIDER GUIDELINES'" (Dkt. No. 47-11, Fok Decl., Ex. 10, at 4.) Plaintiff argues that this section mandates that Defendant ensure its court researchers comply with NAPBS Provider Guidelines, which require that court researchers must return the subject's exact full name, and Defendant's court researchers failed to do so. In reply, Defendant argues its vetting requirements only mandate that the researcher be certified under NAPBS Provider Guidelines, not that they comply with all provisions of the NAPBS Provider Guidelines. This raises an issue of fact as to

Defendant's vetting requirements and whether Defendant's vetting policies were reasonable in order to assure maximum possible accuracy on consumer reports.

In addition, Mr. Bovy, Insight's CIO, states that in 2015, Insight prepared 46,949 reports and only six of the reports were disputed by consumers. (Dkt. No. 43-3, Bovy Decl. ¶ 5.) He states that none of the disputes concerned a failure to require or use a consumer's middle name. (Id. ¶ 6.) However, Plaintiff notes that he informed Insight of a dispute concerning his middle name in 2015 and Mr. Bovy does not recognize Plaintiff's dispute which creates a disputed fact as to the accuracy of his calculations.

Next, Defendant cites to Plaintiff's deposition transcript where he stated that he did not believe that Defendant intentionally or willfully issued an inaccurate report demonstrates Defendant was not willful. However, a party's subjective intent is not relevant under the "reckless disregard standard." See Adams, 620 F. Supp. at 330 n. 7 ("while the record contains no indication that [the defendant] intentionally reported inaccurate information--in fact, the record shows that [the defendant] took immediate steps to remedy the inaccuracies in its report once those inaccuracies came to light--the Supreme Court recently held that a defendant may be held liable for willfully failing to comply with the FCRA under 15 U.S.C. § 1681n for actions taken in "reckless disregard" of the statutory requirements of the Act.").

Next, as to whether Insight ran a risk of "violating the law substantially greater than the risk associated with a reading that was merely careless" is the line between recklessness and negligence. See Syed, 853 F.3d at 505. The question is whether Insight ran an "unjustifiably high risk of violating the statute." Safeco, 551 US at 70.

In support, Plaintiff presents the expert report of Tom Larson who stated that when it comes to criminal records, the industry standard for identification is "first name, middle name, last name and date of birth." (Dkt. No. 47-5, Fok Decl., Ex. 4, Tom Larson Expert Report at 4.) Also, if a CRA goes to a court and performs an index search, and a file is identified, the researcher should review the file to match the name and other identifiers. (Id. at 5.) Moreover, Larson opined that no conviction record should ever be

reported unless it is absolutely verified.  (Id. at 7.)  Next, Plaintiff presents the Safe Hiring Manual, which is also relied on by Defendant's expert, which states the best practice is to use all information in the possession of the employer, researcher or screening firm to determine if the criminal record is associated with the subject.  (Dkt. No. 47-6, Fok Decl., Ex. 5 at 3.)  If there is a "hit," the researcher "needs to determine if the person located is truly the applicant."  (Id.)

Mr. Bovy, Insight's CIO, the person most knowledgeable and the employee who runs Insight's background checks, testified that it would be helpful to know the criminal defendant's full name if its available.  (Dkt. No. 47-8, Fok Decl., Ex. 7, Bovy Depo. at 88:5-8.)  He testified that the middle name is now a required field after a CFPB[11] ruling.  (Id. at 9-16.)  Insight's CEO Joshua Haydon testified that there is a general understanding that a researcher must return the subject's middle name if one is contained in the court's indexed records.  (Dkt. No. 47-3, Fok Decl., Ex. 2, Haydon Depo. at 106:24-107:12.)

Even Mr. Nadell, Defendant's expert, testified that the industry guideline is for the researcher to return the person's full legal name as it appears in the court records.  (Dkt. No. 47-10, Fok Decl., Ex. 9, Nadell Depo. vol. 2 at 33:17-20.)  He states that a middle name always improves accuracy.  (Dkt. No. 47-4, Fok Decl., Ex. 3, Nadell Depo. vol. 1, 136:3-6.)  He also asserted that certain articles, such as the Safe Hiring Manual, state that capturing the middle name is important or valuable if you can get it.  (Id. at 171:16-174:7.)

Further, the Public Record Retrieval Industry Standards Manual, ("PRRISM"), states that the researcher, as part of the public search, agrees to supply "the [e]xact full name as listed in docket or index" and all "identifiers listed in docket or index, including address, date of birth, SSN, or any other relatable Identifier."  (Dkt. No. 47-9, Fok Decl.,

---

[11] It appears that Mr. Bovy is referencing the CPFB press release dated October 29, 2015 which was issued more than seven months after Insight prepared Adan's report.  (Dkt. No. 43-16, Stepanyan Decl., Ex. 12.)

Ex. 8, at 3.)  Lastly, the National Association of Professional Background Screeners ("NAPBS") provides guidelines for research providers concerning criminal research and states that if a criminal record is found, the report must include the subject's "exact full name."  (Dkt. No. 47-8, Fok Decl., Ex. 7 at 14.)  These facts concerning the industry standards and expert testimony that a middle name improves accuracy raise a genuine issue of disputed material fact precluding summary judgment on the whether Insight ran an "unjustifiably high risk of harm that is either known or so obvious that it should be known."  Accordingly, the Court DENIES Defendant's motion for summary judgment on the allegation of willfulness under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k(a)(2).

**D.      Fourth Cause of Action – Violation of 15 U.S.C. § 1681i(a)(6)**

In the fourth cause of action, Plaintiff asserts that Defendant willfully and/or recklessly violated 15 U.S.C. §§ 1681i(a)(6)(A) and (B) by failing to provide Plaintiff written notice containing required items within 5 business days after completion of the reinvestigation.  (Dkt. No. 21, FAC ¶¶ 59.)

Defendant moves for partial summary judgment arguing that there is no evidence of willfulness and/or reckless conduct by its failure to provide written notice of the results of the reinvestigation.  Moreover, Defendant argues it provided Plaintiff with oral notice and complied with the provision that notice may be provided "by other means available to the agency."  Plaintiff moves for partial summary judgment asserting that Defendant failed to provide any written notice to him and such conduct constitutes a willful violation of 15 U.S.C. §§ 1681i(a)(6)(A) & (B).[12]

The FCRA requires a consumer reporting agency to conduct a free reinvestigation of a consumer's file if "the completeness or accuracy of any item of information

---

[12] In his motion for partial summary judgment, Adan also seeks summary judgment under 15 U.S.C. § 1681i(a)(1), a claim not asserted in the FAC.  In opposition, Defendant argues that the motion should be denied because the claim is not asserted in the first amended complaint.  In reply, Plaintiff acknowledges that the specific claim is not alleged in Plaintiffs FAC, and withdraws his motion on this statutory provision.

16cv2807-GPC(WVG)

contained in a consumer's file . . . is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A).  15 U.S.C. § 1681i(a)(6)(A) requires a consumer reporting agency to provide written notice of the results of the reinvestigation within 5 business days of its completion of the reinvestigation either "by mail or, if authorized by the consumer for that purpose, by other means available to the agency."  15 U.S.C. § 1681i(a)(6)(A).

The notice must include

(i) a statement that the reinvestigation is completed;
(ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;
(iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;
(iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and
(v) a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

15 U.S.C. § 1681i(a)(6)(B).

On the merits, Defendant argues, without providing relevant legal analysis, that it met the requirement of notice since Plaintiff was notified by telephone which constitutes "other means available to the agency."  Mr. Bovy, the CIO of Insight, testified that he recalls a telephone call initiated by Insight where he informed Plaintiff that Insight had called the court and confirmed the middle name was not the same as Plaintiff's and that Insight updated the report.  (Dkt. No. 43-6, Stepanyan Decl., Ex. 2, Bovy Depo. at 121:23-123:20.)  In one of the calls, Insight told Adan that they would call him back with the updated information, and he agreed to the notice by telephone.  (Id. at 122:1-9.)  Although not clear, it appears that Adan called Insight on April 8, 2015 and Insight called him back with the updated information on April 9, 2015.  (Id. at 123:13-20.)  Since

Plaintiff was informed by "other means", Insight argues it was not required to provide written notice.

In his motion, Plaintiff argues, without legal support, that "other means" include other methods of written communication and not an oral communication. He argues that an oral communication cannot be contemplated by the statute since the notice provision requires, *inter alia*, a "consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation." 15 U.S.C. § 1681i(a)(6)(B). Therefore, according to Plaintiff, an oral communication does not satisfy the "other means available to the agency."

First, material to the issue raised is knowing the details of the communications between Adan and Insight. Bovy's testimony is not clear as to the dates of who called who on what date. Mr. Bovy testified that he initiated a call to Plaintiff informing him about the results of the reinvestigation, but provides no date on when this call occurred but later states the call occurred on April 8 or 9. (Dkt. No. 43-6, Stepanyan Decl., Ex. 2, Bovy Depo. at 121:23-123:20.) He also states he orally received Adan's consent to receive the results of the reinvestigation by telephone call but he does not state when he received the consent. If Insight notified Adan by telephone on April 9, then it would have been unnecessary for Adan to have attended the state court hearing on April 14, 2015. The record to date creates an inference that Adan did not learn that his report had been updated until April Harvey informed him by email on April 14, 2017. (See Dkt. No. 47-19, Fok Decl., Ex. 18 at 6.) The facts presented are disputed and not clear. Moreover, both party present their own interpretation of "other means available" without any legal authority to support their position,[13] and fail to support their arguments.

---

[13] Defendant cites to <u>Anderson v. TransUnion LLC</u>, 367 F. Supp. 2d 1225, 1236 (W.D. WI 2005) where the court held that the defendant satisfied the notice provision, under § 1681i(a)(6), through a telephone call. <u>Id.</u> However, <u>Anderson</u> is inapposite as the plaintiff alleged the defendant failed to provide them notice of the results of the Automated Credit Dispute Verification form. The court held that § 1681i(a)(6) does not require a CRA to provide notice of specific responses but only the results of the reinvestigation. <u>Id.</u> Because the defendant made changes that plaintiff sought during a telephone call,

As to willfulness, as discussed above, Defendant's argument that there is no "clearly established" authority that required it to provide written notice of the results of the reinvestigation on the issue of willfulness is without merit. Defendant also argues that Plaintiff can show no established authority interpreting the statue as requiring written notice once notice has already been provided by other means authorized by the consumer. Plaintiff argues that "by other means" still requires written notice but by other mediums, such as fax or email. Since there is a genuine issue of material fact whether Plaintiff was notified "by other means", the Court concludes this necessarily creates a genuine issue of material fact as to whether Defendant's failure to provide written notice was willful and/or reckless.

Because there are disputed issues of material fact, and the parties presented insufficient legal analysis on this provision, the Court DENIES both parties' motion for partial summary judgment.

## E.   Damages - Loss of Employment

Defendant argues that Plaintiff seeks loss of future earnings from his lost employment with RRS but the undisputed facts demonstrate that the report issued by Insight had no bearing on RRS' decision to rescind Adan's job offer. Courtney Worle, the HR director and the person most knowledgeable at RRS, testified that Jennifer Melver, the VP of Operations, made the decision to rescind Adan's offer. (Dkt. No. 43-17, Ex. 13, Worle Depo. at 45:11-49:16.) She testified that Melver's decision to rescind the offer had nothing to do with Insight's background report but was due to business considerations. (Id.) In fact, Ms. Melver did not even look at Adan's background check. (Id. at 72:21-73:4.)

---

that constituted sufficient notice. Id. Here, the facts are disputed as to the alleged telephone notice Defendant claims it made, and the facts do not demonstrate that changes were made during any telephone conversation between Plaintiff and Defendant.

In opposition, Plaintiff asserts that April Harvey, the HR coordinator at RRS, informed him that the reason the offer was rescinded was because of the background check report. (Dkt. No. 47-16, Fok Decl., Ex. 15, Adan Depo. at 76:12-17; 78:6-11.) Moreover, in an email dated April 9, 2015, April Harvey wrote, "Once you figure everything out, please send me documents and we will go from there. We do have one spot open for the call center." (Dkt. No. 47-19, Fok Decl., Ex. 18 at 2.)

While the parties agree that Plaintiff's offer of employment by RRS was rescinded in March 2015, (Dkt. No. 47-21, P's Response to D's SSUF, No. 6), the facts demonstrate that he was still a candidate for a position at RRS as of April 9, 2015.

Plaintiff has raised a genuine issue of material fact whether his job offer was rescinded due to the inaccurate background check report generated by Insight. The Court DENIES Defendant's motion for summary judgment on the loss of employment damages claim.

## F.    Evidentiary Objections

Defendant seeks to strike two paragraphs in Mr. Lawson's expert report arguing he is not qualified to opine on Insight's intent or compliance with the FCRA and constitute impermissible speculation and legal conclusions. (Dkt. No. 43-1.) Plaintiff, in his opposition, does not address Defendant's objection and also does not rely on these two paragraphs to support his arguments. Accordingly, since Plaintiff did not rely on these opinions of Mr. Lawson, the court OVERRULES Defendant's objections as moot.

In opposition, Plaintiff objects to the declaration of Shawn Bovy, the CIO of Insight, based on an alleged failure to disclose the underlying documents Bovy relies on to come to his conclusion under Rule 26(a) and the best evidence rule. (Dkt. No. 43-3, Bovy Decl.) In the declaration, Bovy presents the number of reports Insight prepared in 2013, 2014 and 2015 and the number of those reports that were disputed by consumers. (Id. ¶¶ 3-5.) Defendant argues that Rule 26 does not require a party to produce information that a witness will testify about and a declaration under penalty of perjury is sufficient to satisfy the Rule of Evidence. Because the Court concluded that there was a

disputed issue of fact as to the accuracy of Bovy's declaration, the Court did not consider it and OVERRULES Plaintiff's objection as moot.

As to the other remaining evidentiary objections to Plaintiff's and Defendant's evidence, the Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider it.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion for partial summary judgment. The Court GRANTS, as unopposed, Defendant's motion on the third cause of action and DENIES Defendant's motion on the first, second and fourth causes of action. The Court also DENIES Plaintiff's motion for partial summary judgment on the fourth cause of action. The hearing set for January 19, 2018 shall be **<u>vacated.</u>**

IT IS SO ORDERED.

Dated: January 18, 2018

Hon. Gonzalo P. Curiel
United States District Judge